Case number 221245 Marshall Lloyd et al. v. Ford Motor Company. Oral argument not to exceed 15 minutes per side. Mr. Berman, you may proceed for the appellant. Good morning. Good morning, Your Honor. Steve Berman on behalf of the appellants. I reserve three minutes. Very well. As the court knows from the briefing which you indicated you've read, we seek review of the court's ruling that the claims in this case were preempted, that they were barred by the doctrine of primary jurisdiction, and that we did not state claims under the Consumer Protection Act in various states. Starting with express preemption, I would submit to the court that there are three Supreme Court cases directly on point.  All hold the same thing, that if the state imposes requirements that are identical to and not in addition to those required under federal law, there's no preemption. That's exactly what happened in this case. All that we pled is that Ford needed to follow the applicable EPA standards which are set forth by the Society of Automotive Engineers. Anyone can follow those who's competent. If they had followed those standards which are identical to the federal standards, there would have been. Why isn't the question of whether they followed the EPA standards a matter for the EPA to decide, as opposed to state law? Well, I think what you're going to there, Judge Griffin, is primary jurisdiction. Sure. That's the primary jurisdiction argument. So the primary jurisdiction argument, I submit, fails for two reasons. Well, actually, three reasons. One, this court in United States v. Hahn has held that if there's no administrative forum, no administrative remedy, the court should retain jurisdiction. Here, not only does the EPA have no forum for addressing claims like this, but the EPA has closed the matter. As Ford proudly points out, the EPA says we're not going to do anything here. I thought the EPA did have a procedure to adjudicate this or to, no? Not that I'm aware of. At all? And the EPA has closed the matter. So the matter is over with. But as to sticking with primary jurisdiction. The fact that it's over with, that the, your brief says that it's over with regard to criminal prosecution. Do you concede it's over with forever, that the EPA has made a determination that what was submitted complies with their rules and regulations? I have no idea, Your Honor. There's nothing in the record to suggest or in the EPA's pronouncements as to whether they're still looking at this on a civil basis. Okay. And as to primary jurisdiction. Can I ask you, switching gears between that and, I think it's related to that, but it goes back to preemption. So there's two types of theories of fraud. There's the fraud of saying best in class. And then there's also the fraud that you didn't follow the regulations, the EPA's own regulations. If you had followed those regulations, the fuel economy numbers would have been higher. It strikes me that at least that second point is preempted because you interpret the preemption provision to say as long as the state law enforcement is identical in all respects, whereas it says, if you read it precisely, it's identical with respect to the requirements in the disclosure statute. And the requirements in the disclosure statute, the first one, says you have to list on the Monroney label the fuel economy number, and that's a defined term. And it's defined as the EPA-derived number. So under your view, I think there is a disconnect between the state regime and the federal regime because the state regime would necessitate a different number than the federal regime, which is the number that the EPA has adopted. Now, you say that that EPA number is derived from an invalid input, but it's still requiring Ford to depart from the EPA's own number. So I don't see how it could be described as identical. Because it's not the EPA number. It's a defined term. The fuel economy is defined, even if the EPA totally delegates. It's like not doing its job, it's delegating to Ford. The input that the EPA approves is defined as the fuel economy as determined by the EPA. Determined by the EPA-approved regulations. Well, it just says as determined by the EPA at this other provision. And as we allege in the complaint, there are prescribed procedures that the EPA sets forth that all the manufacturers follow, and Ford was supposed to follow those procedures. Ford didn't follow those procedures. So all we're saying is the obligation of Ford is identical under state law. All they had to do was comply. You say, are those procedures related to disclosure? Those procedures are related to determining the EPA number. But once the EPA number is determined, then there's an obligation of Ford to disclose that number to the public. And it seems to me that that disclosure obligation is tied to whatever number that is. Whatever number the EPA input, whether valid or invalid, they have a duty to disclose that EPA-approved number. That's right. And you would require them to disclose a different number. No, all we're requiring is for them to have disclosed the EPA number and to have followed the EPA number. But it's not the EPA number. Yeah, I mean, suppose the EPA actually did come forward and said, we don't think this fraud is a valid claim. We're sticking with our numbers. Would you agree at that point that there would be a conflict? Or would you say, no, a jury can decide that the EPA was wrong and they actually didn't follow the federal regulations? Well, if the EPA had come and said, we agree with Ford, right, then I think we would have a preemption problem, potentially. I'm not sure I would concede that point either, because all we're saying here is if Ford had complied with the law, it would have published different EPA figures. So we're not asking them to do anything that they weren't required to do under federal law. And we think under the... Doesn't the EPA determine what figures they publish as opposed to Ford? They do not, Your Honor. That's all the EPA does is take these procedures, follow those procedures, and send us the numbers, and then we'll say, okay, and you put those on your stickers. The EPA doesn't independently... No, they don't independently test the vehicles, but they are the ones that come up with the figures, right? Or they make a determination as to the figures. All the EPA does... You're saying Ford actually, on their own, decides what figures to put on their vehicles. I don't think that's what the law is. Absolutely. Ford does the... Ford absolutely is, okay. Ford does the test. Ford sends the test results to EPA. You say EPA doesn't do anything. No, EPA looks at it and says, okay, you've... Okay, they say okay, or they could say not okay, right? They could do that. Okay, so the EPA makes the decision, not Ford. But the EPA is relying totally on Ford's numbers. Well, they don't necessarily have to, that's all. You're saying maybe they did it here. Yes, sir. I have a different question. Sure, sure. I'm interested in knowing about the remedies that you're seeking in the case, and also just the factual basis of are there actually any new vehicles that have these alleged false Monroney stickers on them? Have all the vehicles already been sold at this point? Yes, Your Honor. Okay, so we're talking about vehicles that are on the secondary market at this point. Presumably the labels have all been taken off of these vehicles. No, the labels have remained on the vehicles. Oh, this is not a label that goes to the sticker on the car when you buy it and you take it off? Presumably those labels have all been taken off and thrown in the trash somewhere, right? Presumably. So we have a bunch of cars on the secondary market. There are no labels on these cars. And you're asking for, as I understand it, for Ford to send a letter to the owners of the car, or people who bought the car, to tell them that their numbers were wrong? This is primarily a damage case. So you're not seeking that remedy at all? No. Because I think that was one of the remedies you sought in the complaint. But it's primarily a damage case. So at this point you're only seeking damages? That's correct. And, Your Honor, most of these cars are new cars. So this case is a couple of years old. So the primary class members here, if there were a class, are new car buyers, people who would have gone in and seen them. I guess when you say new car buyers, the purchases have already taken place though, right? That's correct. They were new car buyers at the time the purchase took place. That's correct. But these are all used cars at this point, correct? That's correct. Okay. What I'm getting at is, is there really any interference with what the EPA does? Because it seems like to me you're seeking damages, which doesn't really interfere with what the EPA does going forward. I mean, there's not any current Monroney sticker that's being affected by the relief you're seeking in this case, is there? No, there is not. You're just saying this past testing was done incorrectly, resulting in an incorrect Monroney number. That's right. And you're seeking damages for that. That's correct. So I'm going to be asking this of Ford, but exactly what exactly that you're seeking interferes with what EPA, how it does its job going forward? And I'm not really seeing there's any interference. No, the thrust of the case is simple. They market these cars as best in class using these false fuel economy figures, and we allege that it's material to consumers to know the mileage. That's what's alleged in the complaint. And there's, over the life of these vehicles, about $1,000 difference between the EPA fraudulent Ford sticker and the actual fuel economy. And we're seeking that difference. The actual fuel economy covered by EPA standards as opposed to real world standards? That's right. We're not challenging real world standards. How would there not be a conflict? So this is an EPA number. If the EPA, you suggested that even if the EPA were to disagree with your fraud allegation, that it might not be preempted. But I don't see how they could possibly comport with both the federal regime and any state law tort remedy which regulates, even damages claims are designed to regulate primary conduct. And so a damage for using an EPA number would entitle you to relief, entitle Ford to liability for using the very number that EPA mandated. But we don't have that situation here. All we know, and I see my time is up. I'll answer your question. All we know is that we allege, based on experts we hired, the same experts that we used in Volkswagen, that resulted in a consent judgment, and the same experts we used in Mercedes, that resulted in a consent judgment. They found that the numbers were fraudulent. That Ford gave it to the EPA and the EPA said, okay, put those on the car. EPA hasn't. But isn't it the EPA number, the status quo at this point, whether it's fraudulent or not, the status quo is the EPA approved number. And until the EPA says, I mean, as Judge Bush says, maybe this is moot because these are all outdated cars, but until the EPA changes the fuel economy number that the EPA has identified, Ford has to follow that number on the Monroney label. So I think the correct issue at this point is the EPA said to Ford, okay, put those on the car. And all we're saying is that state law doesn't interfere with the process because all state law is saying is you should have put on the numbers on the car and sent the numbers on the car to the EPA that actually followed the EPA prescribed guidelines. And as Ford admits, those guidelines are uniform. They're repeatable, which is what we did. And all that you had to do was tell the truth. And telling the truth is parallel with the federal requirements and is not preempted in our view. Thank you, Your Honors. Thank you. You'll have your rebuttal. Good morning. Good morning, Your Honors. Stephanie Douglas on behalf of Ford Motor Company. I think you're exactly right that this is the EPA's number, that that's what they're challenging. Under the statutes and regulations, the EPA has to establish the fuel economy. They must measure the fuel economy of each vehicle. It's true they can do their own testing, but they can also delegate that testing. But under the statutory regime, it's overseen entirely by the EPA. A test vehicle isn't a test vehicle until an EPA says it's a test vehicle. So whatever Mr. Berman's expert tested, it was not a fuel economy test vehicle and it may not be used to generate fuel economy test data. Test data isn't test data until the EPA says it's test data. You may not generate a fuel economy calculation unless you're using fuel economy test data approved by the EPA. That includes the EPA checking the vehicle, its history, the equipment that you're measuring it on, the calibrations, the driver. The EPA has a mechanism to audit that data along the way, to check it against its database of all the other vehicles for reasonableness and whether it believes it will be representative of the fleet. And the obligation doesn't end when the Monroney sticker is taken off. The EPA can come back later, can audit the vehicles once they're out in production, and can order. What obligation does the manufacturer have at this point with respect to the EPA number, the Monroney number? Now that the vehicles, you agree that vehicles have all been sold at this point. The ones in the putative class, yes, as it's currently defined. I'm just trying to figure out, is there any prospective impact of what they're seeking on Ford or the EPA for that matter? Absolutely. What is that? The EPA adopts the number and then uses the number in its CAFE calculations. So it sends it to the Secretary of Transportation. The Secretary of Transportation uses it in the CAFE calculations. And those remain, to this day, the United States' CAFE calculations for the years in question. They are the EPA's determination of what Ford's vehicles fuel economy are, based on, again, fuel economy test vehicles, fuel economy test data. The complaint attached as Exhibit 1. What's the status of the EPA investigation at this point? It has resolved and the EPA numbers remain the EPA numbers. Both civil and criminal? Correct. Have been resolved? Correct. Is that something we can take judicial notice of? The plaintiffs acknowledged it in their opening brief. He seems to be acknowledging criminal but not civil. It's written in their opening brief. I want to say it's page 18, but they acknowledge that the EPA investigation is closed. And if it weren't closed, then the answer is primary jurisdiction, right? You let the EPA question resolve, and the way the courts handle that is you let the question resolve, and then you follow that determination. So unless the EPA comes and says, Ford, you have to restate, and the plaintiffs have acknowledged that that sometimes happens even long after the vehicles have been sold, you have to restate, you pay penalties. There's lots of penalties involved. There's lots of civil penalties involved. And I draw your attention to Exhibit 1 to the complaint because it explains that process. It explains that the premise of the complaint is false, the idea that this is just an SAE test, that anybody can run it without the EPA's oversight, and that there's no discretion involved. Every time you run the test, the numbers are going to be the same. That's not true, and the EPA says it in Exhibit 1. They say if we run a test and we come up 10% different, that's fine. It's not an allowance. It's a recognition that tests and vehicles will be different. If they run a substantial number of tests in an audit, the numbers have to come out right. But a single vehicle, that might be off by up to 10%, they say. So the premise that you could take a vehicle with an expert who's not under the supervision of an EPA, Exhibit 1 also talks about all the discretion that's used in particular in calculating road load, which is what's at issue in the complaint. They say you had to run these road tests. It's the SAE test. That's not true. This Exhibit 1 says manufacturers have discretion. You can use derived numbers. You can use analytical methods. You have to disclose them. The EPA has to accept them. They can challenge it. But once it's been accepted, it's the EPA's number. They're not challenging Ford's fuel economy numbers. They say they are. But what they're really challenging, Judge Murphy, you got it right, is the EPA's number. What about the separate representations that Ford allegedly made regarding fuel economy? So what they point to in that is best in class. Best in class is also an EPA determination. They're required to periodically publish best in class numbers. And let's just say they won. This is an MDL. So this would get tried in I don't know how many jurisdictions. I think there's 20 states left. One jurisdiction could decide that the correct EPA number was 21, and another jurisdiction could decide the correct EPA number was 20. The EPA number is the correct EPA number. There is no other EPA number. So you're saying the best in class is you can read that to be referencing the EPA number. It's absolutely an EPA reference. It is a best in class of EPA estimates, always of EPA estimates. If Ford was required to tell everybody So suppose we read the complaint differently to actually be advertising that Ford said, aside from the EPA number, that the Ford Rangers and the Ford F-150s were the best in class in the real world. Now that strikes me that that might be outside the scope of any preemption. The cases seem to draw this divide between affecting the EPA number itself and then kind of real world numbers outside the EPA process numbers. So why wouldn't that fall outside any preemptive if they were actually alleging that Ford was marketing best in class in terms of like real mileage you're going to get? I think I'd need to see that advertisement. But there are certainly cases that say if you make representations beyond the label, then those might not be preempted. But I haven't seen any representation. Does your preemption argument then hinge on our reading the complaint when they say best in class to only be referring to the EPA number? I think it hinges on the particular ads they're talking about. And if those particular ads say fuel economy as determined by the EPA, then I don't think you can misinterpret that. Because the EPA is also required under this regime to not only measure the fuel economy of each vehicle, but to publish a booklet that describes the fuel economy for each year. That booklet still exists, right? So you could have Ford retell everybody everything. That booklet still exists and it still tells people which vehicles are best in class. It puts a little marker by them, which vehicles are best in class. This isn't information that Ford's misleading consumers by. This is the very information that if consumers wanted to know what the fuel economy was, if they went to fueleconomy.gov, they'd find the numbers that Ford put on the vehicles. There's nothing misleading about that. That goes straight into all the preemption documents. Can I ask you just kind of a slippery slope hypothetical? Is there any limit? Is your point that no matter how egregious the fraud, just take a case where it was just blatant fraud, the EPA just was either in the pocket of a different company or something, or there was agency control, so the EPA did nothing. One could read the express preemption provision as trying to not enforce different requirements, but to allow private enforcement. Because it says you're allowed to have supplementary remedies for identical legal standards. So in that hypothetical, do you think there would be a potential state cause of action, or do you think it really is solely within the EPA's purview, no matter how egregious the fraud on the EPA? I think until the EPA changes the numbers, it's preempted to bring a state law tort claim saying that the EPA's number is wrong. So you'll accept the slippery slope and say the EPA, hopefully we trust federal agencies and we expect them to police fraud? That's right. And they do here. They have that system. And again, here. So if this had been a situation where the EPA came out and said we were defrauded, then you would say this would not be preempted? I think that's a harder question because I don't know about the retroactivity thing. I'm not certain what would happen if the EPA came out. Certainly you'd say they have a much stronger case. They certainly have a stronger case than they do now when the EPA numbers are the EPA numbers. There's nothing that this case is going to change to make the vehicle they're expert tested an EPA test vehicle. And until it is, we can't use it for fuel economy calculations. We just can't. And neither will the EPA. The premise of the case is just false in that way. The other thing that's interesting is this is a fraud on the EPA case. And the way the EPA learned about this, and in fact the way the plaintiffs learned about this, is Ford told the EPA when the questions came up. Ford notified the EPA that questions had been raised, and Ford cooperated with the EPA, the DOJ, and CARB in determination of this to allow a plaintiff to hire an expert to test one vehicle or perhaps two vehicles and declare a fraud entirely upsets the regime. Because then the Monroney sticker, it's attached as Exhibit 18 to the complaint, it says EPA and DOT on it, and it has the EPA and DOT and Secretary of Energy's logos on it. Those are required by regulation because the EPA felt it would make the numbers more credible if they were coming from the agency. They are the agency's numbers. To then allow anyone to bring any claim that those numbers are fraudulent based on a single test entirely upsets that regime. No one can trust those numbers anymore because they think the EPA is asleep at the wheel. The only way that you know that the comparison works is that you trust the EPA is applying the same rules to all the manufacturers. So if another manufacturer can use analytics and derive data as Exhibit 1 says they can, and as of course the regulations say they can, but the plaintiff's lawyers come in and say, well not Ford because we've got a test that says they can't use this number because our guy says it's wrong. Their guy isn't the decider. The decider is the administrator of the EPA. And the administrator of the EPA has ample authority to audit it even still today and ample incentive to impose penalties if there is any sort of indication of cheating. The other thing is this directly implicates both Buckman and Mensing preemption. Buckman is a fraud on the EPA claim. That's straight on point here. If you need to prove a fraud on the federal agency in order to win your case, that's Buckman preempted. And Mensing preemption is if it's impossible for us to do it without the agency. You can't change the EPA's numbers without the EPA. That's impossible. So it implicates both of those. How would you, your friend on the other side would distinguish Buckman on the ground that that was about fraud on the EPA, but this is about not just fraud on the EPA but also fraud on consumers because when you list that number, that number is a fraudulent number when it's sold to consumers as well. So it's more of a, it's not contingent on fraud on the EPA. I think that goes, I think that's a distinction without a difference. Because in Buckman, the theory was that bone screw wouldn't have been on the market if they'd have been honest with the agency. So they were still bringing a product liability claim under the theory that if you had been honest, that product wouldn't have been on the market and we wouldn't have been injured. And here they're arguing if you would have been honest, you would have disclosed different numbers. I don't really see a difference in that. And I think it's still, if there were a difference, then you run into Mensing preemption. Because then it's just we can't do it without the EPA. We can't declare a different EPA number without them. And I also think Garcia, the Sixth Circuit case, interprets Buckman to say if in order to prove your case, you have to prove the underlying fraud on the agency, if your case exists by virtue of the federal statutory regime, the statutes and regs, which is exactly what he's saying happens here, this case doesn't exist in a state tort world before and without the EPCA. There is no state law, common law duty to do fuel economy tests. There is no state law, common law duty to publish fuel economy tests. That exists entirely because of this regime, and expressly so that there can be one determinator of fuel economy standards so that those standards can be applied equally to all manufacturers and consumers can understand that that's what those are. If the court has no further questions, I ask the court to affirm. And I'll give you your one minute and 15 seconds back. Thank you. Thank you, Your Honors. First, as to the point that my lone colleague made about these are EPA numbers, I refer the court to the record at 2172-2176, where we make it clear that this is an honor system. So EPA engages in what it calls the honor system. We're honoring Ford and the manufacturer to give us the correct numbers, which we then approve. So these are not the EPA numbers. But so, I mean, that comment is just, isn't that a criticism of just the way that EPA is running the regime? Because I do think as a legal matter, we have to describe them as the EPA numbers. It's just that's what the statute plainly says. And your response is just that, well, they're the EPA numbers, but the EPA has really just fallen down on the job. But that's a pragmatic point. But legally, I don't think it's significant. Well, I think my response is that all we're saying is that if Ford had followed the EPA requirements, the EPA procedures, which are not something that are made up. They're prescribed in the SAE standards. They're easily repeatable, which Ford admits in his brief. It's what our experts did. But if they had done that, if they had followed federal law, then the numbers would have been different. And all that state law is doing here is imposing the identical obligation they had under federal law. And I submit to the court that where the district court went astray here is there are, and this is what I started with when I was reading to get ready for this. I said, wow, there are three Supreme Court cases that say if you're just requiring to do what the federal law requires you to do, there's no preemption. The district court ignored those. Ford never responds to those at all. And this court in the Fulgenzi case and the Howard v. Sulzer case came to the same conclusion. And I submit to the court that Fulgenzi is on point on the issue of Buckman preemption. Let me ask you a quick question about the representations that Ford made. Do you agree that the representations were all related to when it says best in class and most fuel efficient gas powered midsize pickup in America? Do you understand that Ford was referring to what the tests were under the EPA? I agree with that, Your Honor. Okay. They're not referring to like a real, any other kind of test? No, but nothing. Okay. But our point on that is, first of all, our point on the consumer protection claim is this is largely an omission claim. Right? You admitted to tell us that you fudged the test. The district court didn't deal with the omission issue at all. He just said, well, I'm going to deal with the misrepresentation claim. So we have an omission claim that was never addressed below. And we think that also was error. Thank you, Your Honors. Thank you. Case will be submitted. You may call the next case.